## THE HOBOKEN BANK FOR SAVINGS

### v.

### PETER H. BECKMAN et al.

1. Where a father conveys all of his property to his two young sons, under suspicious circumstances as to the time, the method and the consideration thereof, the fact that the deed itself purports to have been given for a valuable consideration, and that the answers of the sons, under oath, aver that it was so given and was *bona fide*, will not sustain it as against the father's creditors.

2. Evidence of the statements of one of the two sons as to the partnership

debt which is claimed to be the consideration of the alleged fraudulent conveyance, is competent against the other son.

Creditor's bill. On rehearing of final decree.

*Mr. F. B. Ogden,* for complainant

*Mr. R. Parmly,* for defendants

THE CHANCELLOR.

This cause has been reheard. At the original hearing, which resulted in a decree for the complainant (*Hoboken Bank* v. *Beckman, 6 Stew. Eq. 53*), part of the evidence was not before the court, but was inadvertently omitted from the record. It relates to the encumbrances on the property in question. That evidence is now before me. There is also additional evidence as to the age of William Beckman. The facts of the case are, that the complainant obtained a decree in this court August 8th, 1878, against the defendant, Peter H. Beckman, for deficiency, if any there should be, in a suit for foreclosure of mortgage. The deficiency was found to exist, and the amount was ascertained on or about March 27th, 1879, and an execution against goods and lands issued against him therefor, April 4th, 1879, which was returned wholly unsatisfied five days afterwards. After the decree for deficiency (which, as before stated, was made August 8th, 1878), and before the deficiency was found to exist, Peter H. Beckman conveyed the property in question, a large amount of real estate in Hudson county, to his two sons, William and Henry, for the consideration as expressed in the deed of $7,758.88. The deed is dated March 14th, 1879. The sheriff's sale in the foreclosure suit took place thirteen days afterwards. By the answer, the defendants make the following statement as to the consideration of the deed: That William and Henry, under the firm of Henry Beckman & Brother, have been, since July, 1876, or thereabouts, the proprietors and owners of a livery stable in Jersey City, and have been the owners of, and have carried on there a large and thriving business as undertakers, in

Hoboken Bank *v.* Beckman.

·connection with their stable; that their father, understanding the management of business better than they, was permitted by them, at his request, to take care of and manage the financial part of the business for them, to collect and be the custodian of the moneys of the firm, and to pay those moneys out for the firm as necessary in the conduct of the business; that he so received for them large sums of money more than he paid out, and that at all times there was a large amount due them from him on that account, which he frequently promised to adjust, but never did until an accounting was had between them and him about the date of the deed, and that the consideration of the deed was the amount then found due to them from him. The value of the property conveyed was $50,000, if the title to all of it were in fee, but as to part, valued at about $29,000, the title is merely a tax title. When the cause was heard originally, there was no proof before me as to the amount due on the encumbrances. Making due allowance for, and deduction of the encumbrances, it appears that the value of the property conveyed, over and above all encumbrances of every kind, was $5,546.05, not taking into account the land held by tax title, of which there was a large amount, the fee of which, as before stated, is valued at $29,000. What the value of the tax title to it is, does not appear. The circumstances of the case lead to the conviction that the transaction was fraudulent. The father owed no other debt than the contingent one for possible deficiency to the complainant, except the alleged debt to his sons. He conveyed all his property by absolute deed to his sons for an alleged debt of $7,758.88, none of the particulars of which are given, and which, it is alleged by the answer, was due from him to them for money of theirs which he had collected as their agent, in a business carried on in their names, but of which he had, as their answer states, the financial management, making the collections and paying the bills. They say they could get no account from him on the subject of his transactions until the time of making the deed. Why he gave them an absolute deed instead of a mortgage does not appear. Nor is any reason given why he accounted to them at that particular time. He conveyed all his

property to his two sons under circumstances such as to induce strong belief that it was done to defeat the complainant in the collection of its debt, if there should be a deficiency on the sale of the mortgaged premises.

It is urged by the defendants, however, that the fact that the deed purports to have been given for a valuable consideration, and that the defendants, by the answer, which, according to the requirement of the bill, is on oath, allege that there was a valuable consideration, and that the conveyance was *bona fide,* casts on the complainant the burden of proof, and it is insisted that the presumptions in favor of the defendants from those circumstances have not been overcome. But in such a case as this, where the conveyance is made under circumstances which, as stated by the answer itself, are abundantly conducive to doubt, to say the least of it, as to the fairness of the transaction—where the grantor is a father who, on the eve of the issuing of an execution against him for a debt for which a conditional judgment has already been entered against him, transfers all his property by absolute deed to his two young sons for money which they say he had owed them for a long time for collections in a business which, though carried on in their names, was managed by him in its financial part, and no particulars of any kind are given in respect to this debt, and there does not appear to have been any voucher for it, and no discharge given when the conveyance was made—it is not enough, even in the absence of other evidence, to protect the transaction from the condemnation of the court, as having been designed to defeat creditors, that the deed declares that it was made for valuable consideration, and the defendants swear so, too, in their answer, and add an asseveration that the conveyance was made without fraud. The statement in the former opinion that one of the sons was a minor, was an error, but it now appears by the affidavits put in on the rehearing that William came of age February 8th, 1879, only a little over a month before the deed was made. What the other brother's age was does not appear. According to the answer, William and his brother have been in the business out of which the alleged indebtedness arose since July, 1876, so that

the former went into it when he was a minor but eighteen years and five months old, and he was a minor up to a few days before the time of making the deed.

There is, however, some other evidence in the cause strongly tending to show bad faith. Allusion is now made to the testimony of Mr. Sherman, the complainant's president, as to what was said to him by one of the two sons. It is argued on the part of the defendants that this testimony, being only of one of the two, is not competent as against the other, but it clearly is competent on the question whether there was a fraudulent combination of these parties, to show what one of the partners said in reference to the transaction, especially as to the alleged partnership debt which is made the consideration of the conveyance which is assailed. Mr. Sherman testifies that in the beginning of April, 1879, after the conveyance had been made, one of the sons came to the bank and he had a conversation with him in reference to the sale of the property by his father to him and his brother. He says he, Sherman, asked him whether he had bought the property from his father, and he said he had; that he, Sherman, asked him how much he had paid his father for it, and he said he did not know; that he repeated the question, and young Beckman again said he did not know, and added that " it was not fixed upon (or fixed up) yet—it was on their books " or " the books ; " that he asked him if he paid his father any money, and he repeated that he " could not tell; that it was not fixed upon (or fixed up) yet." Mr. Sherman says he asked him whether he was working for his father, and he said he was. On cross-examination, he says young Beckman said he *had been* working for his father. He also says that the young man stated that his father had sold the property to him alone, and he thinks that the father said that he had sold the property to that son.

I am not only unable to conclude that the conveyance in question is free from fraud, but I cannot resist the conviction that it was in fact fraudulent. The defendants urge on the attention of the court the case of *Fifield* v. *Gaston, 12 Iowa 218,* as one very similar in its circumstances to this, in

which the conveyance was sustained. In that case, however, the conveyance was not made to a son, but to a stranger, a creditor of the grantor, for wages for work done for the latter; the consideration was proved, and the grantee admitted that the deed was merely a mortgage to secure his debt. The cases of *Sayre* v. *Fredericks*, *1 C. E. Gr. 205*, and *Morris Canal* v. *Stearns*, *8 C. E. Gr. 414*, and *S. C.*, *9 C. E. Gr. 588*, are more applicable to this, and are authoritative. In the former, it was held that the denial of fraud in an answer will not avail to disprove it where the answer admits facts from which fraud follows as a natural and logical, if not a necessary and unavoidable, conclusion. In the other, the debt which was the consideration of the conveyance, was established, but the value of the property was much in excess of it. The debt was due to the estate of the grantor's deceased brother, and the deed was given to the administrators. The fact that there was such excess in value, and the fact that the conveyance was made after the complainant's claim had been placed in an attorney's hands for collection, and the debtor had knowledge of the fact, and had requested the attorney to delay bringing suit against him on it, suggesting that there might be some adjustment of the matter, were regarded as proof of fraud, and the deed was set aside as against the complainant's judgment. There is no error in the final decree in the case under consideration.